# Application of 18 U.S.C. § 203 to Maintenance of Contingent Interest in Expenses Recoverable in Litigation Against the United States

18 U.S.C. § 203 does not prohibit a prospective government officer from maintaining upon his entry into government service a contingent interest in expenses recoverable in litigation involving the United States.

January 28, 1998

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This memorandum responds to your request for our opinion whether 18 U.S.C. § 203 prohibits a prospective government officer from maintaining a contingent interest in expenses recoverable in litigation involving the United States.* For the reasons set forth below, we conclude that § 203 would not prohibit the prospective officer from maintaining such an interest upon his entry into government service.

## I. Background

The prospective officer's law firm represents plaintiffs on a contingency basis in a product liability suit against a corporation that petitioned for bankruptcy in May 1995, and the firm has continued to represent its clients in the bankruptcy proceeding. The law firm has advanced certain litigation expenses on behalf of its clients, making payments to cover, among other things, court costs, costs of medical examinations, telephone and facsimile charges, and deposition reporting costs. If the law firm's clients secure damages against the corporation, the firm will deduct these expenses from the award and receive a percentage of the remainder as a fee. It is not likely that the firm will recover its expenses before the prospective officer's projected entry into government service.

Section 203 of title 18 generally prohibits a federal officer or employee from receiving "compensation for any representational services," rendered "personally or by another" before a court or agency during the officer's or employee's government tenure, in connection with any proceeding in which the United States is a party or has a direct and substantial interest.[1] The United States is one of the

---

*Editor's Note: For privacy reasons, material has been redacted from this opinion that might identify the prospective government officer.

[1] In pertinent part, § 203 provides·

    (a) Whoever, otherwise than as provided by law for the proper discharge of official duties, directly or indirectly—

        (1) .    receives . . . any compensation for any representational services, as agent or attorney or otherwise, rendered or to be rendered either personally or by another—

    . . . .

Continued

1

defendant corporation's creditors and is therefore a participant in the bankruptcy proceeding in which the law firm maintains a contingent interest. It has been the longstanding view of the Office of Legal Counsel that § 203 prohibits an individual entering government employment from maintaining a contingent interest in fees recoverable in a proceeding involving the United States.[2] The prospective government officer therefore proposes, upon entering government service, to disassociate himself from the litigation and to forfeit any entitlement to his share of *fees* contingent upon the plaintiffs' recovery. He would, however, retain an interest in his share of any repayment of *expenses* advanced, prior to his entry into government service, on behalf of the firm's clients. The question presented is whether § 203 prohibits the prospective officer from maintaining such an interest.

## II. Discussion

### A.

The starting point in assessing § 203's reach is, of course, the text of the statute itself. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989). To determine whether § 203 prohibits this individual from retaining a contingent interest in the recovery of expenses, we must ask whether the payments that he would receive in the event that his clients recover damages are properly characterized as "compensation for . . . representational services." The term "compensation" is not defined in § 203 or related provisions of the federal criminal code, nor has any court considered, within the specific context of a prosecution under § 203

(B) at a time when such person is an officer or employee . . . of the United States in the executive, legislative, or judicial branch of the Government, or in any agency of the United States,

in relation to any proceeding . . . or other particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, court, court-martial, officer, or any civil, military, or naval commission,

. . . .

shall be subject to the penalties set forth in section 216 of this title.

18 U.S.C. § 203(a) (1994)

[2] *See, e.g.*, Memorandum for Files from Sol Lindenbaum, *Re: Application of 18 U.S.C § 203*, at 1 (Dec. 16, 1980); Memorandum for Edwin L. Weisl, Jr., Assistant Attorney General, Land and Natural Resources Division, from Frank M. Wozencraft, Assistant Attorney General, Office of Legal Counsel, *Re: Interest of U S Attorney in Condemnation Suit — D.J No. 33–36–650–2, Civil No. C–7779, Columbus, Ohio* at 1 (Nov. 9, 1966), Letter for Hon. Edward Weinberg, Deputy Solicitor, Department of the Interior, from Norbert A Schlei, Assistant Attorney General, Office of Legal Counsel (July 24, 1963); *cf Acceptance of Legal Fees by United States Attorney*, 6 Op O L C. 602 (1982)

Although the rationale underlying this longstanding interpretation has never been articulated with clarity, the interpretation is consistent with a view of § 203 as primarily seeking to prevent the actual or apparent influence of an officer or employee over a proceeding involving the government by virtue of the individual's pecuniary interest in the proceeding's outcome *See infra* pp 4–6 A rule against retaining a contingent interest in fees reflects that a contingent fee covers the entire representation up to the payment, the amount remains uncertain until then, and the fee thus compensates, in part, for representational services performed after the employee began working for the United States. We need not address that interpretation here because it simply does not apply to reimbursement for already identified expenses, as we conclude below, payments offsetting expenses are not properly characterized as compensation for representational services

or its predecessors, whether a client's reimbursement of expenses can constitute "compensation." The term "varies in its meaning depending on the words and the subject matter in connection with which it is used." 15A C.J.S. *Compensation* 101 (1967 & Supp. 1997). Here, Congress used "compensation" in connection with the qualifying phrase "for . . . representational services." The phrase is significant in two respects. First, in light of the focus on "services," the most natural reading of § 203 is that Congress intended to limit the statute's coverage to those forms of payment typically associated with the performance of personal services, such as fees, wages, salary, or commissions. Second, the use of the word "for" makes clear that § 203 embodies an element of exchange. Section 203 does not prohibit all compensation to a government officer or employee; rather, it targets compensation that the officer or employee receives *in exchange for* representational services rendered personally or by another. Put another way, the fact that a government officer or employee receives a monetary payment or something else of value will not alone trigger a violation of § 203. Nor is it sufficient that an officer or employee receives something of value *because* a representational service occurred during his or her government tenure. The provision requires that the officer or employee receive something of value *in exchange for the representational services* performed on the client's behalf during the officer's or employee's government tenure.

Because § 203 covers only payments received in exchange for representational services, it does not reach an officer's or employee's recovery of expenses advanced on a contingency basis on behalf of a client.[3] If litigation efforts on behalf of the prospective officer's clients prove successful, he will receive something of value: he will recoup costs that he otherwise would have been required to absorb. Nevertheless, the payments in question will not take a form typically associated with the performance of personal services, nor will they have been made in exchange for any representational services. It is true that the officer will receive payment only *because* another attorney performs the representational services that ultimately enable his clients to recover damages. It is also likely that the prospective officer or another attorney performed representational services *while* disbursing the funds for which he now seeks repayment. For example, a firm-that advances funds to a third party or that pays court costs on a client's behalf is in fact performing representational services such as securing the appearance of a third party as a witness or ensuring that the client's action proceeds in the proper forum. It does not follow, however, that the recovery of expenses is properly characterized as a payment made *for* representational services. An

---

[3] Because this prospective officer is an attorney, our discussion necessarily focuses on the application of § 203 to attorneys' fee arrangements. Section 203, however, extends to one who "demands, seeks, receives, accepts, or agrees to receive or accept" compensation for representational services, "*as agent or attorney or otherwise.*" 18 U.S.C. § 203(a)(1) (emphasis added) We believe that our analysis would apply equally to non-attorneys who provide representational services, such as consultants and experts in engineering, accounting, and similar professional fields. As we discuss, § 203 would not extend to a contingent interest in the recovery of items billed in good faith as expenses.

attorney who arranges for the appearance of a witness or who pays court costs ordinarily receives a fee for performing these representational services, whether in the form of a fixed hourly rate or a contingent interest in the outcome of the case. *Above* that fee, the attorney also seeks reimbursement for the actual outlay of funds to the witness or the court on the client's behalf. Thus, an attorney who disburses funds on a client's behalf receives both a payment for performing representational services—namely, *any services connected with the disbursement*—and a payment to offset the *disbursement* itself. In this example, the acts of arranging for testimony and even of disbursing funds would be "representational services," so that the fee paid in exchange for these acts could properly be viewed as "compensation" for "representational services" within the meaning of § 203. In contrast, although the occasion for the reimbursement for expenses arises only *because* the attorney (or another) performed representational services, the reimbursement itself would be insufficient to trigger § 203. Section 203 targets only those payments made in exchange for representational services, not those made simply because representational services occurred.[4] Accordingly, the most natural reading of the language of § 203 suggests that Congress did not intend to prohibit an officer or employee from recovering expenses advanced on a contingency basis on behalf of a client.

### B.

We must look not only to the language of § 203, but also "to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158 (1990). Where a criminal statute is involved, however, "it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text." *Id.* at 160. We conclude that although the history and purpose of § 203 provide some support for a broad reading of the statute, we are not faced with the sort of rare circumstance in which general policy concerns can trump the statutory text.

Section 203 was among several provisions addressing bribery, graft, and conflicts of interest revised by Congress in 1962. Act of Oct. 23, 1962, Pub. L. No. 87–849, 76 Stat. 1119, 1121.[5] Section 203 differed from its predecessor, 18 U.S.C. § 281, principally in targeting payments for representational services performed

---

[4] In some circumstances, an attorney may advance funds to pay the fee of a witness or consultant who performs services on a client's behalf. Some of the third party's services may be "representational" in nature Nevertheless, the attorney who is reimbursed for the funds advanced is not "compensated" for "representational services." It is the third party who receives compensation for those services that he or she performed on the client's behalf. The attorney's right to reimbursement arises not from the fact that the third party has performed representational services, but from the fact that the attorney has satisfied the client's obligation to fund those services in the first instance.

[5] Section 203 was designed to "exten[d] and clarif[y]" its immediate predecessor, 18 U.S.C § 281 (1956) H R. Rep. No 87–748, at 19 (1961). As enacted, § 203 did not prohibit compensation for services rendered in courts Congress expanded the range of proceedings covered by § 203 in 1989 Ethics Reform Act of 1989, Pub L. No 101–194, § 402(1), 103 Stat 1748

on behalf of a client during an employee's government tenure (without regard for the timing of the payment), rather than targeting payments received during an employee's government tenure (without regard for the timing of the services). Leaving aside this shift in the timing of activities that § 203 covers, the core prohibition on an employee's receipt of compensation in connection with proceedings involving the government has remained largely intact since it was first enacted in 1864. The Act of 1864 prohibited a Member of Congress or an executive officer or employee from receiving "any compensation whatsoever, directly or indirectly, for any services rendered . . . either by himself or another, in relation to any proceeding . . . in which the United States is a party, or directly or indirectly interested, before any department, court-martial, bureau, officer, or any civil, military, or naval commission whatever." Act of June 11, 1864, ch. 119, 13 Stat. 123 ("1864 Act").[6] The statute was the last in a series of four mid-nineteenth century statutes designed to address abuses of public office. *See generally* Association of the Bar of the City of New York, *Conflict of Interest and Federal Service* 31–36 (1960). In an extensive review of existing conflict of interest statutes undertaken in 1956, this Office examined the debates preceding the 1864 Act and identified two principal purposes for its passage. Memorandum for the Attorney General, from Frederick W. Ford, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Conflict of Interest Statutes* app. at 4–14 (Dec. 10, 1956), *reprinted in Federal Conflict of Interest Legislation: Hearings on H.R. 1900, Before the Antitrust Subcomm. of the House Comm. on the Judiciary*, 86th Cong., 619, 624–34 (1960) (*"Hearings"*). First, Congress sought to prevent "the exercise or abuse of official influence on the part of Government officials with respect to matters before Government departments, agencies or officers in which the United States is interested." *Id.* app. at 13, *reprinted in Hearings* at 633. Second, Congress sought to encourage officers of the government "to devote their full time to the government duties for which they were paid" and to remain unbiased in the discharge of those duties. *Id.; see id.* app. at 7, *reprinted in Hearings* at 627.

The 1864 Act's sponsors were concerned not only that public officials would actively seek to affect the result of a particular proceeding, but also that an individual could influence the proceeding's outcome merely by virtue of his or her status as a public official. As originally proposed, the provision barring the receipt of compensation during government service would have applied only to Members of Congress. *See id.* app. at 4–5, *reprinted in Hearings* at 624–25. The concern over the possibility of influence in matters involving the government emerged most clearly in debates over whether Congress should include proceedings before courts–martial among those proceedings in which its Members could not perform

---

[6] With the 1909 revision of the criminal code, Congress extended the provision to apply to Members of Congress from the time of their election. Act of March 4, 1909, ch 321, sec. 113, 35 Stat 1088, 1109. A 1940 amendment exempted retired officers of the armed forces Act of Oct. 8, 1940, ch 761, 54 Stat. 1021 Congress redesignated the provision as 18 U.S.C § 281, section 203's immediate predecessor, in its 1948 revision of the criminal code

services for compensation. *See id.* app. at 7–8, *reprinted in Hearings* at 627–28. Proponents of an amendment, ultimately adopted, to include proceedings before courts-martial noted in particular that the promotions of military officers sitting on a court-martial would depend on Senate action, and that Senators appearing before such officers could therefore exercise "undue and improper influence" over their decisions. *Id.* app. at 8, *reprinted in Hearings* at 628. Although Congress was primarily concerned with securing the integrity of departmental and other proceedings against the influence of its own Members—"whose favor may have much to do with the appointment to, or retention in, public position" of the government officials conducting those proceedings, *Burton v. United States*, 202 U.S. 344, 368 (1906)—Congress nevertheless extended the Act's prohibition on the receipt of private compensation during government service to all federal officers and employees.

To the extent that § 203 and its predecessors were designed to guard against the influence—actual or apparent—of government officials or employees in proceedings involving the government, or to guard against bias on the part of an officer with a direct interest in such a proceeding, it is possible to argue that the statute should reach a contingent interest in repayment of expenses as well as a contingent interest in repayment of fees. After all, whether an official's interest is one in expenses or fees does not alter the official's incentive to influence the outcome of a proceeding, the danger that an adjudicator would be affected by the knowledge that the official possesses an interest in the proceeding's outcome, or the possibility that the interest would cause the official to be biased in other government matters. At the same time, it is equally possible to argue that if the purposes alone are considered, then § 203 is far too broad, in that it reaches the interests of officials and employees who are unlikely to be in a position to exert influence over proceedings involving the government even if they have an incentive to do so. The purpose of § 203 and the language used to effect that purpose thus are not perfectly matched. It is for Congress to assess whether its purpose would be better served by a legislative extension of § 203 beyond compensation for representational services. We are not free to interpret § 203 without regard for its textual boundaries. "[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures . . . should define criminal activity." *United States v. Bass*, 404 U.S. 336, 348 (1971).

Indeed, although the general purpose of § 203 and its predecessors might support similar treatment of contingent fees and contingent expenses, the historically *different* treatment of these two categories under professional ethics guidelines supports the conclusion that § 203, as presently drafted, reaches the former but not the latter. Before Congress's 1962 revision of the conflict-of-interest laws, § 203's predecessor, § 281, had been applied to restrict employees entering government service from receiving payments on contingent fee arrangements. In enacting

§ 203, Congress corrected one of § 281's perceived defects—namely, its coverage of payments for services wholly completed prior to the employee's entry into government service. *See* H.R. Rep. No. 87–748, at 9, 20 (1961); Staff of Subcomm. No. 5 of the House Comm. on the Judiciary, 85th Cong., Federal Conflict of Interest Legislation, pts. I and II, at 49 (Comm. Print 1958) ("Staff Report pts. I and II"). This Office has taken the position that, in adjusting the timing of services that the statute reaches, Congress did not alter the application of the provision to contingent fee arrangements under which a government employee stands to receive payments for services *not* wholly completed before the employee's entry into government service. *See supra* note 2.[7]

Even though Congress may have considered the application of the statute to employees holding interests in contingent fee arrangements and elected to retain that bar in cases in which representational services remained to be performed after the individual's entry into government service, it could not have contemplated the application of the new statute to a lawyer's contingent interest in recovery of expenses. At the time of § 203's enactment, ethical rules permitted attorneys to acquire a contingent interest in the recovery of fees, but not in the recovery of expenses. The American Bar Association's ("ABA") Canons of Professional Ethics, first adopted in 1908, permitted contingent fee arrangements "where sanctioned by law," so long as the arrangement was "reasonable under all the circumstances of the case." ABA Canons of Professional Ethics, Canon 13. Nevertheless, the ABA Canons prohibited an attorney from acquiring a contingent interest in the recovery of expenses. Under Canon 42, adopted in 1928, a lawyer could advance expenses of litigation on the client's behalf "as a matter of convenience," but only subject to reimbursement by the client, regardless of the outcome of the case. *See also* ABA Comm. on Professional Ethics and Grievances, Formal Op. 246 (1942). When the ABA promulgated its Model Code of Professional Responsibility in 1969, it retained this distinction between fees and expenses. As amended through 1980, the Code's Disciplinary Rules—prescriptive in nature and designed to govern disciplinary proceedings in those jurisdictions adopting the Code—provided that attorneys could "advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, *provided the client*

---

[7] Section 203(a), as ultimately passed in 1962, was identical in all relevant respects to the first paragraph of § 203 of H R 12547, 85th Cong (1958), *reprinted in* Staff of the Antitrust Subcomm of the House Comm on the Judiciary, 85th Cong , Federal Conflict of Interest Legislation, pts III, IV, and V, at 72–73 (Comm Print 1958). In turn, that provision was based on a draft of revised § 281 proposed by the staff of the Antitrust Subcommittee of the House Committee on the Judiciary, which had been directed in 1957 to analyze existing federal conflict-of-interest laws with a view toward revision. In recommending a revision of § 281, the staff report acknowledged that existing § 281 covered individuals entering the government with a contingent interest in the outcome of a proceeding The report stated that the proposed revision "would continue to affect officials who enter the Government as owners of, or who subsequently acquire, unliquidated or contingent interests in matters and proceedings in which the United States is interested." Staff Report pts I and II, at 49 Thus, although the provision ultimately enacted as § 203(a) was designed to exempt compensation for services *wholly* completed prior to an individual's government employment, it was not designed to exempt compensation that an employee would receive only by virtue of services performed after he entered the government

7

*remains ultimately liable for such expenses.''* Model Code of Prof'l Responsibility DR 5-103(B) (1980) (emphasis added). It was not until 1983, when the ABA adopted its Model Rules of Professional Conduct (''Model Rules''), that arrangements for contingent recovery of expenses began to gain acceptance. Rule 1.8(e)(1) of the Model Rules permits a lawyer to ''advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter.'' Although a majority of states have adopted the Model Rules, some 17 states continue to prohibit the contingent recovery of litigation expenses.[8]

The historically distinct treatment under professional ethics standards of lawyers' arrangements for contingent recovery of fees and arrangements for contingent recovery of expenses—with the former commonly accepted in the civil context and the latter largely prohibited until 1983—counsels against assuming that § 203, as revised in 1962, should reach a contingent interest in expenses. Were we to conclude that § 203 reaches a contingent interest in recovery of expenses, we would be applying § 203 to a type of payment arrangement largely unknown in the legal profession at the time of the statute's enactment.

## C.

The Office of Government Ethics (''OGE''), charged with providing overall policy direction for the ethics program in the executive branch, has expressed concern that exclusion of reimbursement for expenses from § 203's reach will lead to administrative difficulties, because the demarcation between those payments that are ''for . . . representational services'' and other payments is unclear. *See* Letter for Beth Nolan, Deputy Assistant Attorney General, Office of Legal Counsel, from Marilyn L. Glynn, General Counsel, Office of Government Ethics at 1–2 (Dec. 22, 1997). In particular, a professional fee for services may sometimes include a portion attributable to expenses—such as general overhead or the cost of in-house photocopying or computer research—incurred by the person providing the service. OGE therefore argues that § 203 should be interpreted to cover *all* types of payments made to an attorney in connection with representational services—including both compensation for services and payments reimbursing the attorney for expenses associated with those services. OGE suggests that any other approach would make it difficult to administer the statute in the same manner to attorneys with different billing practices.

---

[8] States that prohibit the contingent recovery expenses include those that have retained disciplinary rule 5-103(B) of the Code of Professional Responsibility, *see* DR 5–103(B) of the Iowa, Massachusetts, Nebraska, Ohio, Oregon, Tennessee, Vermont, and Virginia Codes of Prof'l Responsibility; *see also* Georgia Code of Prof'l Responsibility DR 5-103(C), N.Y. Comp Codes R & Regs tit. 22, § 1200 22(b)(1), and those that have varied rule 1.8(e)(1) of the Rules of Professional Conduct to require that the client remain ultimately responsible for repayment of advance expenses regardless of the outcome of the case, *see* Rule 1 8(e)(1) of the Arizona, Colorado, Michigan, South Dakota, and Washington Rules of Prof'l Conduct; *see also* New Mexico Rule of Prof'l Conduct R. 16-108(E)(1), North Carolina Rule of Prof'l Conduct R. 1.8(e).

We acknowledge that an interpretation of § 203 as covering anything less than all payments to an individual performing representational services may present a difficult accounting problem for an attorney who wishes, upon entering government service, to retain an interest in the recovery of advance expenses. But the possibility of administrative difficulties cannot compel an interpretation of § 203 that would criminalize more conduct than that which the statutory text clearly reaches. Moreover, there is no reason why application of § 203 cannot vary according to the billing practices of different professionals within the confines of applicable ethical standards. The American Bar Association's ethical rules limit the ability of attorneys to bill clients separately for certain expenses, such as general overhead expenses associated with maintaining an office. *See* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 379, at 8 (1993) ("In the absence of disclosure to the client in advance of the engagement to the contrary, the client should reasonably expect that the lawyer's cost in maintaining a library, securing malpractice insurance, renting of office space, purchasing utilities and the like would be subsumed within the charges the lawyer is making for professional services."). To the extent that state bar rules permit him to do so, an attorney can arrange in advance with the client to include certain other expenses associated with in-house services within a professional fee or to bill the client for those expenses separately. Section 203 reaches those items subsumed within a professional fee, but not those expenses separately billed to the client at actual cost.[9] Thus, an attorney who includes certain expenses within a professional fee may not retain a contingent interest in those expenses upon entering government service, whereas an attorney who bills the client separately for the same expenses may do so. In either case, the attorney's choice of payment arrangement forms the starting point for the analysis: nothing in § 203 requires equal treatment for attorneys who choose different payment structures. Indeed, similar questions arise in connection with attorney fee awards under federal or state law, and courts have deemed it appropriate to take into account prevailing billing practices in the legal market in question, as well as an attorney's particular practices, in determining what items may be awarded under the statute. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 285–87 (1989) (attorney fee award under 42 U.S.C. § 1988), *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (same). We are aware of no authority requiring uniformity in fee awards despite varied billing practices.

---

[9] In referring to the "actual cost" associated with in-house services, we do not intend to assign the phrase a technical meaning. Rather, the phrase is intended to make clear that § 203 does not permit an attorney to disguise items that would ordinarily be considered part of a professional fee—and therefore not recoverable on a contingent basis after an attorney enters government service—as expenses through a bad-faith agreement to charge the client an inflated amount for actual costs incurred

\* \* \*

In sum, we conclude that 18 U.S.C. § 203 does not prohibit this prospective government officer from maintaining a contingent interest in the recovery of advance expenses in litigation involving the United States. Section 203's prohibition on the receipt of "compensation" extends only to compensation "for . . . representational services." Although it is likely that others will perform additional representational services on behalf of the prospective officer's clients before the litigation is ultimately resolved, any payments that he will receive for past advances cannot be viewed as payments *for* these or, indeed, earlier representational services. The general purposes of § 203 might support the conclusion that § 203 should be extended to cover the payments contemplated here, but those general purposes cannot expand the statutory text.

DAWN JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*